**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
v.                             )
                               )    Criminal Action
                               )    No. 00-10172-PBS
CLAUDIA SANCHEZ,               )
                               )
                               )
_____Defendant.    )
```

**MEMORANDUM AND ORDER**

February 3, 2016

Saris, C.J.

**INTRODUCTION**

The property at issue, a 1996 Acura Legend, was administratively seized by the government in May 2000 as part of a drug trafficking case against the petitioner, her common-law husband, Freddie Martinez, and nine other defendants. The *pro se* petitioner, Claudia Sanchez, has moved for the return of her automobile pursuant to Federal Rule of Criminal Procedure 41(g), claiming that she was entitled to an "innocent owner" defense. Sanchez also alleges that the government failed to provide proper notice of the forfeiture and failed to prove a substantial nexus between the vehicle and the criminal activity.[1]

---

[1] Alternatively, she claims she was deprived of her property without due process.

1

Sanchez filed her motion after the statutory time limitation for civil claims against the government. The petitioner claims, however, that notice was inadequate. After review of the record, this Court **DENIES** the petitioner's motion and renewed motion. (Docket Nos. 443, 489).

## FACTS

The government indicted eleven defendants, including Sanchez, on May 17, 2000, and seized the vehicle the following day while executing a valid search warrant pursuant to the criminal indictment. At the time of her arrest, the petitioner lived with Freddie Martinez, her common-law husband, at 136 Brookline Street, Lynn, Massachusetts. Based upon old records, the Drug Enforcement Administration (DEA) believed that a non-defendant, Elizabeth Ferrer, was the owner of the vehicle. After determining that the DEA had sufficient grounds to pursue an administrative forfeiture, the DEA's Acting Forfeiture Counsel began sending out notices to people with potential property interests in the vehicle. The forfeiture procedures are detailed in an affidavit submitted by the DEA's Acting Forfeiture Counsel.

On July 7, 2000, the DEA sent written notice via certified mail to Freddie Martinez at his home (shared by Sanchez) and at the Plymouth County House of Corrections, where he was being held. The DEA also sent notices to Martinez's attorney and to

2

the vehicle's former owner, Elizabeth Ferrer. In her initial motion, Sanchez states that "she had a family member post the required bond of $1,407.50 to ensure due process." Docket No. 444 at 4.[2] The DEA then published the forfeiture notice in the Wall Street Journal once per week for three consecutive weeks from July 24 to August 7, 2000.

After sending out the initial notices, the DEA learned that Sanchez was the actual owner of the vehicle. On August 29, 2000, the DEA sent forfeiture notices to Sanchez via certified mail to her last-known address—126 Brookline Street, Lynn, Massachusetts—and to MCI Framingham, the prison where Sanchez had been held following her arrest. Sanchez states that she had already been released by the time the notice was sent to the prison and that she was no longer living at her last-known address. Additionally, the DEA sent written notice to her attorney of record, Elizabeth Lunt, who was representing Sanchez in the underlying criminal case. All of these notices stated the statutory requirements for contesting this forfeiture and the applicable deadlines.

On January 5, 2001, the DEA forfeited the vehicle as there had been no properly executed claim on the property. On September 6, 2001, the government dismissed the criminal

---

[2] It is unclear whether the posted bond money was ever returned to Sanchez by the DEA following the final decree of forfeiture.

indictment against Sanchez. On September 24, 2007, while the case was still assigned to Judge Gertner, Sanchez filed her motion for return of property. It was never ruled on and was reassigned to this Court after Judge Gertner's retirement. On March 11, 2013, the plaintiff asked this Court to renew her motion for return of property.

## DISCUSSION

"Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint." United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995) (quoting Onwubiko v. United States, 969 F.2d 1392, 1397 (2d Cir. 1992)).[3] Therefore, this Court will treat Sanchez's motion as a civil complaint against the government.

### I. Statute of Limitations

The petitioner claims that she never received notice of the forfeiture and should not be held to the statute of limitations. The government argues that the petitioner admitted to actual

---

[3] At the time of Giraldo, Rule 41(e) provided that "[a] person aggrieved by . . . the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property." Giraldo, 45 F.3d at 510 n.1. Similar language is now found in the current version of Federal Rule of Criminal Procedure 41(g), under which Sanchez moves for her property's return.

knowledge of the forfeiture in her original motion, and that her claim is time-barred by the five-year statute of limitations under 18 U.S.C. § 983.

"In April 2000, Congress enacted the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106–185, 114 Stat. 202, codified in part at 18 U.S.C. § 983, which overhauled procedures for most federal civil and nonjudicial forfeiture actions initiated after August 23, 2000." Mesa Valderrama v. United States, 417 F.3d 1189, 1195 (11th Cir. 2005). In the context of a judicial forfeiture, the First Circuit noted that the forfeiture "commenced when the government filed a complaint of forfeiture." Upshaw v. U.S. Customs Serv., U.S. Dep't of Treasury, 153 F. Supp. 2d 46, 49 (D. Mass. 2001) (citing United States v. Real Prop. Located at 221 Dana Ave., Hyde Park, MA, 239 F.3d 78, 82 n.3 (1st Cir. 2001)). However, in the context of an administrative or nonjudicial forfeiture, the "legislative history indicates that 'for purposes of the effective date provision, the date on which a forfeiture proceeding is commenced is the date on which the first administrative notice of forfeiture relating to the seized property is sent.'" United States v. Contents of Two Shipping Containers Seized at Elizabeth, New Jersey, 113 F. App'x 460, 463 (3d Cir. 2004) (quoting 146 Cong. Rec. H2040, H2051 (daily ed. Apr. 11, 2000) (statement of Rep. Hyde)).

Under CAFRA, a motion seeking to set aside forfeiture "may be filed no later than 5 years after the date of final publication of notice of seizure of property." 18 U.S.C. § 983(e)(3). However, any "challenges to the adequacy of notice in administrative forfeiture proceedings begun before August 23, 2000" are subject to a six-year statute of limitations. United States v. Sims, 376 F.3d 705, 707 (7th Cir. 2005) (emphasis added). For the six-year statute of limitations, "[t]he period will run from the conclusion of the criminal proceedings or civil forfeiture proceedings." Id. at 709. The statute "can be tolled if the defendant is unable despite diligent inquiry to file his claim on time." Id. Where, as here, "there has been a related criminal proceeding but no civil forfeiture proceeding, the cause of action accrues at the end of the criminal proceeding during which the claimant could have sought the return of his property by motion, but neither sought such return nor received his property." Bertin v. United States, 478 F.3d 489, 493 (2d Cir. 2007).

This case presents an interesting question as to which statute of limitations applies because the length of this forfeiture procedure, from initiation to final declaration of forfeiture, straddled the effective date of CAFRA. The DEA Acting Forfeiture Counsel indicated in his affidavit that, on May 18, 2000, the DEA accepted this case for forfeiture and, on

6

July 7, 2000, sent out its first notices. However, even though the initial notices and publication in the Wall Street Journal occurred before August 23, 2000, the DEA did not send notice to Sanchez until August 29, 2000, after the effective date of CAFRA. Neither Sanchez, nor the government make any argument or cite any cases that analyze at what time this administrative forfeiture action was "initiated" for the purposes of CAFRA.

However, whether analyzed under either the five or six-year statute of limitations, the petitioner's complaint is time-barred. Under the six-year pre-CAFRA statute of limitations, the operative start date would be the end of criminal proceedings against Sanchez, September 6, 2001, the date the indictment against her was dismissed. Using this start date, the petitioner had until September 6, 2007 to file her complaint. Alternatively, under CAFRA, the plaintiff had five years from the date of final publication of notice, August 7, 2000, to file her complaint. The petitioner would have had to file her complaint before August 7, 2005 to comply with the statute. Since the petitioner filed her complaint on September 24, 2007, later than either possible alternative time limitation, including the limitation most favorable to the petitioner, the petitioner's motion is time-barred. However, the petitioner argues she never received notice of the forfeiture, and thus was denied due process.

7

## II. Adequacy of Notice

The petitioner argues that the forfeiture should be declared void because she never received notice from the government and the government's attempted notice was insufficient. The government responds that, by sending notice to the petitioner's last-known address, the petitioner's attorney, and the prison in which she was held after arrest, in addition to publishing notice in the Wall Street Journal, it adequately fulfilled its obligation to attempt notice.

"District courts have jurisdiction to entertain collateral due process attacks on administrative forfeitures." Giraldo, 45 F.3d at 511. "Whereas most challenges to forfeiture would be foreclosed by a plaintiff's failure to utilize the mechanism for obtaining judicial relief . . . courts have entertained challenges to the adequacy of notice, reasoning that the mechanism is not available to a plaintiff who is not properly notified of the pending forfeiture." Sarit v. U.S. Drug Enforcement Admin., 987 F.2d 10, 17 (1st Cir. 1993). "[I]t is well settled that, once an administrative forfeiture becomes final, the district court may review only the adequacy of notice." Caraballo v. U.S. Drug Enforcement Admin., 62 F. App'x 362, 363 (1st Cir. 2003).

"[D]ue process, in the forfeiture context, minimally requires that the government provide an individual with notice

and an opportunity to be heard before confiscating his property." Gonzalez-Gonzalez v. United States, 257 F.3d 31, 35 (1st Cir. 2001) (internal quotation marks omitted). "The touchstone is reasonableness: the government must afford notice sensibly calculated to inform the interested party of the contemplated forfeiture and to offer him a fair chance to present his claim of entitlement." Id. at 36 (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). "Whether the notice actually given is or is not reasonable invariably depends on the circumstances of the individual case." Id. The requirement is not "that the State must provide actual notice, but that it must attempt to provide actual notice." Dusenbery v. United States, 534 U.S. 161, 170 (2002) (emphasis in original).

When the government makes an argument that the petitioner had actual knowledge of the forfeiture, independent of any government issued notice, as it does here, "the actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure." Gonzalez, 257 F.3d at 38. "[I]t is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to

preserve that right." In re Medaglia, 52 F.3d 451, 455 (2d Cir. 1995).

"[U]se of the mail addressed to petitioner at the penitentiary [is] clearly acceptable" as notice of forfeiture proceedings. Dusenbery, 534 U.S. at 172. This Court previously held that notice of an administrative forfeiture sent to the last-known address of a fugitive was adequate, especially when the other residents of that address may have been in contact with the fugitive. United States v. Schiavo, 897 F. Supp. 644, 649 (D. Mass. 1995). Notice of a civil forfeiture sent to a petitioner's criminal defense lawyer in an ongoing criminal proceeding is considered adequate when the government receives a return receipt. Bye v. United States, 105 F.3d 856, 857 (2d Cir. 1997). At the time of the forfeiture proceedings, along with sending notice to the petitioner, the government was required to publish notice for three consecutive weeks "in a newspaper of general circulation in the judicial district where the property was seized." 21 C.F.R. § 1316.75(a)(2000).

Since this Court may only review a finalized forfeiture for adequacy of notice, the petitioner's claims relating to the "innocent owner" defense and whether the government adequately proved a nexus between the crime and the vehicle are not subject to review.

After the government learned that Sanchez was the owner of the vehicle, it sent notice via certified mail to her last-known address, the prison where she had been held after arrest, and her criminal defense lawyer's office. At the jail and the lawyer's office, someone signed the delivery confirmation and the slip was returned to the DEA. The DEA's Acting Forfeiture Counsel makes no claim that the notice sent to Sanchez's last-known mailing address was accepted.[4]

The government points out that the petitioner, in her motion, stated that "the plaintiff had a family member post the required bond of $1,407.50 to assure due process." Docket No. 444 at 4. The plaintiff's own admission that she caused a family member to post a bond indicates that she had actual knowledge of the forfeiture proceedings independent of the government's attempts to provide notice.

In addition to sending notices to Sanchez, the DEA also sent them to Freddie Martinez, her common-law husband, his

---

[4] The DEA also published notice in the Wall Street Journal for three consecutive weeks after the seizure. To be sure, it strains credulity that a notice in the Wall Street Journal was reasonably calculated to provide notice of the forfeiture to Sanchez, who does not speak fluent English. As I have said before, a local paper should have been used. See Volpe v. United States, 543 F. Supp. 2d 113, 120 (D. Mass. 2008) (finding notice in the Wall Street Journal was not reasonable). However, since the government took reasonable steps to notify Sanchez personally, reasonable newspaper publication is not material to this ruling.

lawyer, and the vehicle's previous owner. The petitioner claims that she did not receive the notices because she had been staying in New Jersey after being released from jail. She claims that the Probation Office knew where she was staying and could easily have provided her notice in New Jersey. Sanchez also claims that her attorney never informed her of the forfeiture proceeding and that she was under a court order not to speak with Martinez. However, based on the volume of notices sent to multiple locations, the government has borne its responsibility to provide notice reasonably calculated to inform the petitioner of the forfeiture proceedings. Further, Sanchez's own admissions indicate that she had actual knowledge of the forfeiture proceedings. Therefore, this Court rejects the petitioner's challenge to the adequacy of the notice provided by the DEA.

## ORDER

The petitioner's motion and renewed motion for return of property (Docket Nos. 443, 489) are **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge